UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| DOROTA K. M.,[1] | ) | No. 17 CV 4349 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| NANCY BERRYILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | October 25, 2018 |
| Defendant. | ) | |

## MEMORANDUM OPINION and ORDER

Dorota M. ("Dorota") seeks disability insurance benefits ("DIB") based on her claim that she suffers from disabling migraine headaches that prevent her from being able to perform full-time work. After the Commissioner of Social Security denied her DIB application, Dorota filed this lawsuit seeking judicial review of the Commissioner's decision. *See* 42 U.S.C. § 405(g). The parties consented to this court's jurisdiction, *see* 28 U.S.C. § 636(c), and Dorota filed a motion for summary judgment.[2] For the following reasons, Dorota's motion for summary judgment is denied and the Commissioner's final decision is affirmed:

---

[1] In accordance with the recent recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, this court uses only the first name and last initial of Plaintiff in this opinion to protect her privacy to the extent possible.

[2] Dorota did not file a separate motion for summary judgment, but this court treats Plaintiff's Brief in Support of Her Motion to Reverse the Decision of the Commissioner of Social Security, (R. 15), as a motion for summary judgment.

## Procedural History

The procedural history of this case begins in December 2011 when Dorota filed her DIB application. She initially alleged a disability onset date in December 2004, but later amended her application to allege a disability onset date of November 18, 2008. (Administrative Record "A.R." 119, 491.) To prevail on her DIB claim, Dorota must show that she was disabled by her date last insured, which is December 31, 2010. (Id. at 493.) Dorota's DIB application was denied initially, upon reconsideration, and again after a hearing before an Administrative Law Judge ("ALJ") in 2013. (Id. at 19-28, 74-75.) The Appeals Council declined to review the ALJ's 2013 decision, and in October 2014 Dorota sought judicial review of the ALJ's decision. After the parties filed motions for summary judgment, on May 17, 2016, the court (Magistrate Judge Sidney I. Schenkier) issued an opinion reversing and remanding the ALJ's 2013 decision. (Id. at 623-42.) The court remanded the case with instructions for the ALJ to explain how she evaluated the reports Dorota's chiropractor, Jolanta Milet, D.C., generated during three months in 2009 and how those reports impacted the credibility of Dorota's headache complaints. (Id. at 638-40.) The court also instructed the ALJ to address what may have been "a failure of articulation," with respect to the ALJ having possibly drawn a negative inference from a treatment gap without exploring the reasons for that gap. (Id. at 641.)

On remand the same ALJ held a second hearing in January 2017, at which Dorota (who was represented by an attorney), a medical expert ("ME"), and a

vocational expert ("VE") testified. (Id. 512-87.) On February 13, 2017, the ALJ issued a second decision, again concluding that Dorota was not under a disability that would qualify her for DIB. (Id. at 491-504.) On June 9, 2017, Dorota filed a timely complaint in this court challenging the second decision. (R. 1.)

## Factual Background

Dorota presented both documentary evidence and testimonial evidence in support of her claim for DIB.

### A. Medical Evidence

Because the court provided a thorough recitation of the facts relevant to Dorota's claim in the May 2016 remand decision, (see A.R. 624-33), only those facts most relevant to the current appeal are highlighted here. In short, much of the medical evidence that Dorota submitted in support of her claim post-dates her date last insured. With respect to evidence pre-dating her date last insured, in October 2008 Dr. Afshan Hameeduddin referred Dorota for a brain MRI after she reported a history of headaches. (Id. at 216, 267.) The MRI was unremarkable, and later that month Dorota reported to Dr. Hameeduddin that her headaches were better. (Id. at 217.) In November 2008 Dr. Kanu Panchal, a neurosurgeon, examined Dorota and concluded that she had a normal MRI and EEG and that surgery was not warranted. Dr. Panchal recommended that Dorota see a neurologist for headache treatment. (Id. at 206-07.) Dorota saw Dr. Hameeduddin three more times in 2009, and in April of that year she reported symptoms that Dr. Hameeduddin diagnosed as a single episode of major depression. (Id. at 218.) She started Dorota on Lexapro

and a month later she reported less depression but that she was experiencing nausea. (Id. at 219.) Dr. Hameeduddin recommended she continue taking Lexapro but add Midrin for headaches. (Id.) Three months later Dorota had stopped taking Lexapro, and Dr. Hameeduddin prescribed Zoloft and Midrin for headaches and recommended following up with a neurologist if her headaches did not improve. (Id. at 220.)

Instead of following up with a neurologist, during a three-month period in the fall of 2009, Dorota attended 19 sessions with a chiropractor, Dr. Milet.[3] Dr. Milet observed moderate decreases in Dorota's range of motion in the lumbar and cervical spine. (Id. at 222.) Dorota's headache reports varied, with her sometimes reporting that 76% of the time her pain was at a level of 10/10, (id. at 229), and other times reporting no headaches at all, (id. at 234). She reported one headache-free period of two weeks. (Id. at 235.) At her last chiropractic session with Dr. Milet she reported that her headache was at a 4/10 and was affecting her daily activities to the point where she had not been able to seek treatment for 11 days. (Id. at 247.) Dorota did not receive any headache treatment between December 30, 2009, and December 31, 2010, her date last insured. During that period, she twice saw a family practitioner with cold symptoms including headaches, and he treated those symptoms with antibiotics. (Id. at 260-61, 264-65.) Following her date last insured, Dorota started seeing a new chiropractor, David Cavazos, for headache treatment, and saw him 22 times between February and May 2011. (Id. at 271-92.)

---

[3] The records reflect the signature "Jolanta Milet, D.C.," indicating a degree of Doctor of Chiropractic, (see, e.g., A.R. 237). Dr. Milet is not a medical doctor.

4

## B. Dorota's Hearing Testimony

At her second hearing before the ALJ in January 2017, Dorota testified that she had experienced headaches since childhood and stopped working when her son was born, almost four years before her alleged disability onset date. (A.R. 552-53.) She said that during the relevant period she was having headaches a couple of times per week and that they would last for two to three days at a time. (Id. at 559.) To relieve her headache pain Dorota said she would have to stay in a quiet room until the pain dissipated, usually for a couple of hours. (Id. at 562.) She explained that she went to a chiropractor in 2009 because she had bulging discs and having work done on her back and neck improved her headaches. (Id. at 557, 560.) According to Dorota, her chiropractor told her he could "kind of" treat her headaches, but chiropractic treatments might not "help [her] much." (Id. at 560.) When asked why she was unable to work before her date last insured, Dorota said that she would have to take off too much time when she experienced headaches. (Id. at 566.)

With respect to her mental health, Dorota testified that she had mood swings during the relevant period and was diagnosed with depression. (Id. at 565.) She said that she was prescribed pills for depression but stopped taking them after a couple of months because she did not "want to be on these all the time." (Id. at 567.) Dorota testified that she did not seek the help of a therapist until after her date last insured. (Id. at 569.)

5

## C. ME's Hearing Testimony

Medical expert Dr. Jilhewar[4] also testified at the second hearing regarding his opinion about any limiting effects Dorota's impairments might have had before her date last insured. Dr. Jilhewar noted that in the relevant period the only treatment Dorota received for her headaches was chiropractic therapy, and he testified that such treatment is not the standard treatment for migraines. (A.R. 522-23.) He noted that many factors he would expect to see with disabling migraines are not present in the record, including pain management on a consistent basis, hospitalizations, incrementally larger medication doses, treatment with a headache specialist, or preventative therapy with a neurologist. (Id.) Dr. Jilhewar noted that Dorota was mostly taking over-the-counter medicine for her headaches, which he said is not appropriate headache treatment because that medication is known to cause "rebound headache." (Id. at 524.) Dr. Jilhewar considered whether Dorota's condition medically equaled Listing 11.02B, but opined that there was insufficient documentation of a longitudinal record of headache management to support a listings finding and that without a showing that her headaches failed to respond to prescribed treatment, he could not conclude that she met or equaled that listing. (Id. at 526, 528-30.)

When asked his opinion regarding Dorota's residual functional capacity ("RFC") before her date last insured, Dr. Jilhewar testified that if the ALJ were to

---

[4] The hearing transcript identifies the ME only as "Dr. Jilwart [phonetic]." (A.R. 514.) But in the ALJ's decision, the ALJ refers to the ME as "Dr. Jilhewar," and this court adopts the ALJ's spelling. The record does not reflect Dr. Jilhewar's first name.

6

accept Dorota's symptoms of chronic pain, then she would be limited to sedentary work with no other specific limitations, but if the ALJ were to conclude that Dorota's symptoms were not credible, then his opinion would be that she had no severe impairments. (Id. at 527.) Dr. Jilhewar noted that the primary factor he would consider for disabling headaches would be migraine pain existing with the same frequency regardless of the claimant's use of preventative medications. (Id. at 531.) Dr. Jilhewar testified that there is no record of Dorota consistently using preventative medications in the period preceding her date last insured. (Id.)

**D.     The ALJ's Second Decision**

On February 13, 2017, the ALJ issued her decision denying Dorota's DIB application for the second time. (A.R. 491-504.) After determining that Dorota meets the insured status requirements of the Social Security Act through December 31, 2010, the ALJ applied the standard five-step analysis applicable to social security determinations. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the analysis the ALJ concluded that Dorota had not engaged in substantial gainful activity from her alleged disability onset date through her date last insured. (A.R. 493.) At step two the ALJ concluded that Dorota had two severe impairments during the relevant period: cervical degenerative disc disease and migraine headaches. (Id.) The ALJ considered Dorota's complaints of anxiety and depression but noted that the consulting physicians had opined that there was insufficient medical evidence on which to base a severity determination for these alleged impairments. (Id. at 494.) The ALJ assessed Dorota as having only mild limitations in four areas of mental

7

functioning, including interacting with others and maintaining concentration, persistence, and pace. (Id.)

At step three the ALJ concluded that neither of Dorota's impairments nor any combination of her impairments met or medically equaled the severity of a listed impairment. (Id. at 495.) The ALJ considered Listing 11.02 but noted that the MEs at both hearings opined that the medical record did not reflect the severity required by that listing. (Id. at 495-96.) Specifically, the ALJ noted that there was insufficient evidence of a longitudinal record of headaches or management of pain by an accepted medical source. (Id. at 496.) Before turning to step four, the ALJ determined that prior to her date last insured Dorota had the RFC to perform sedentary work but must avoid moderate exposure to temperature extremes, may not work in hazardous environments or at unprotected heights, must avoid loud environments, and must not drive commercially. (Id. at 496.) Based on that RFC and the testimony of a VE, the ALJ concluded at step four that before her date last insured Dorota could have performed her past relevant work in data entry or as a cost clerk. (Id. at 502.) Accordingly, the ALJ found that Dorota was not disabled prior to her date last insured. (Id. at 503.)

## Analysis

Dorota argues that the ALJ committed several reversible errors, including by failing to comply with the court's remand instructions to more fully consider the chiropractic treatment notes from 2009, improperly determining that she did not have sufficient headache treatment to medically equal Listing 11.02, assigning an

8

RFC that she argues is unsupported by substantial evidence, and improperly weighing the credibility of her symptom statements. This court applies a deferential standard of review to an ALJ's decision and will reverse that decision "only if it is not supported by substantial evidence or if it is the result of an error of law." *See Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations and quotation omitted). Even where there could be reasonable disagreement as to whether the record evidence suggests the claimant is disabled, this court may not substitute its judgment for the ALJ's and is bound to affirm the ALJ's decision if it is "adequately supported." *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015).

### A.  Law of the Case

Dorota first argues that the ALJ committed a reversible error of law because, according to her, in the decision on remand the ALJ failed to comply with the court's instruction that she consider Dr. Milet's treatment records in evaluating the severity of Dorota's headaches. Although Dorota acknowledges that the ALJ discussed Dr. Milet's treatment notes in her second decision, she argues that the ALJ violated the law of the case doctrine by "summarily dismiss[ing]" those records based on the ME's testimony and by failing to address the substance of Dr. Millet's notes. (R. 15, Pl.'s Mem. at 7.) The law of the case doctrine applies to judicial review of ALJ decisions in the social security context and requires the ALJ "to conform any further proceeding on remand to the principles set forth in the

appellate opinion unless there is a compelling reason to depart." *See Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998) (internal quotation and citations omitted). Here, Dorota's argument sounds more as though it rises under the related mandate rule, "which requires a lower court to adhere to the commands of a higher court on remand." *Kovacs v. United States*, 739 F.3d 1020, 1024 (7th Cir. 2014) (internal quotation and citation omitted). Either way, this court concludes that the ALJ complied with the court's remand instructions.

The ALJ considered Dorota's treatment with Dr. Milet in the second decision. She highlighted Dorota's testimony describing her treatment relationship with Dr. Milet and the fact that Dr. Milet evaluated her CT scan as showing a bulging disc. (A.R. 497.) The ALJ noted Dorota's testimony that the chiropractic treatments helped with her headache pain. (Id.) The ALJ also referred to Dr. Milet's notes from September 2009 as documenting treatment for headaches and left shoulder, low back, and arm pain. (Id. at 498.) She acknowledged Dr. Jilhewar's testimony explaining why Dr. Milet's notes, in his opinion, did not support a finding of disabling migraines. (Id. at 499.) Specifically, the ALJ discussed Dr. Jilhewar's testimony that Dr. Milet had recorded a reduced range of motion in the cervical and lumbar spines, but that no medical doctor had made those assessments, and the two neurosurgeons she saw did not document similar findings. (Id.) The ALJ then addressed Dr. Milet's notes in the context of the court's remand order. She noted that Dorota had seen Dr. Milet for only three months and emphasized that chiropractic care is not the standard of medical

treatment for migraines. (Id. at 500-01.) The ALJ noted that any opinion Dr. Milet would have given would not be entitled to controlling weight under the regulations and that the short duration of the treatment relationship weighed against a finding of listings-level severity or greater limitations than set forth in the RFC. (Id. at 501.) Although the ALJ could have discussed the 19 treatment notes in more detail, Dorota's suggestion that the ALJ "simply disregard[ed]" the remand order is inaccurate. (R. 15, Pl.'s Br. at 7.) An ALJ is not required to discuss every piece of evidence in the record in detail, *see Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013), and here the ALJ's treatment of Dr. Milet's records on remand is sufficient to demonstrate that she complied with Magistrate Judge Schenkier's instructions. Accordingly, Dorota has not shown that the ALJ violated the law of the case doctrine.

**B.     Listing 11.02**

Dorota next argues that the ALJ erred in relying on what she characterizes as Dr. Jilhewar's "erroneous and unsupported testimony" that Dorota's migraine headaches do not meet or medically equal the criteria for Listing 11.02. (R. 15, Pl.'s Mem. at 8.) The claimant alleging a listings-level impairment bears the burden of demonstrating that she satisfies all the criteria of the applicable listing and that her impairment meets the 12-month regulatory duration requirement. *See* 20 C.F.R. §§ 404.1509, 404.1520(d), 404.1526; *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). The Listing of Impairments does not include a migraine-specific entry, *see Kwitschau v. Colvin*, No. 11 CV 6900, 2013 WL 6049072, at *3 (N.D. Ill.

11

Nov. 14, 2013), and here the ALJ evaluated whether Dorota's condition met or medically equaled Listing 11.02, which describes the criteria for epilepsy. Specifically, Listing 11.02B describes: "Dyscognitive seizures . . . occurring at least once a week for at least 3 consecutive months . . . despite adherence to prescribed treatment[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.02. The listing makes clear that to meet the criteria for Listing 11.02 the claimant must have limitations that "exist despite adherence to prescribed treatment," meaning that the claimant has "taken medication(s) or followed other treatment procedures . . . as prescribed by a physician for three consecutive months" but the "impairment continues to meet the other listing requirements despite this treatment." *Id.* § 11.00C.

Dr. Jilhewar testified that Dorota's migraines do not medically equal listing 11.02 because there was no record of a twelve-month course of treatment by an accepted source and no medication management of her migraines before her date last insured. (A.R. 522-23, 525-26.) Dr. Jilhewar noted that to meet the listing Dorota must show a lack of response to prescribed treatment, and he testified that such evidence is missing here. (Id. at 530.) According to Dr. Jilhewar, chiropractic care is appropriate for acute spinal problems but is not the standard of care for a chronic condition like migraines. (Id. at 522-23, 529.) The ALJ credited Dr. Jilhewar's testimony and concluded that Dr. Milet's notes were insufficient to establish listings-level severity. (Id. at 496, 501.)

Dorota argues that the listings analysis is erroneous because, according to her, Dr. Jilhewar's opinion was "predicated on a mistake of fact or a

misinterpretation of evidence," and therefore was unreliable. (R. 15, Pl.'s Mem. at 9.) Specifically, she takes issue with Dr. Jilhewar's testimony that chiropractic treatment is not the standard of care for migraines, and points in support to the post-hearing brief her representative submitted to the ALJ, which included a list of internet search results and citations to two medical studies that she says show that chiropractic treatment is commonly prescribed for migraines. (Id. at 10.) But this court may not weigh that evidence against Dr. Jilhewar's testimony to decide which represents the standard of care. Instead, the court asks whether the ALJ adequately explained her decision to prioritize Dr. Jilhewar's opinion over Dorota's post-hearing evidence. *See Stepp*, 795 F.3d at 718. The ALJ explained that she did not find Dorota's post-hearing evidence sufficient to overcome the testimony of a seasoned ME with more than 20 years of experience analyzing medical records in accordance with the social security regulations and listings. (A.R. 501.) She further explained that regardless of Dr. Jilhewar's opinion regarding the validity of chiropractic treatment, the three-month span of Dr. Milet's treatment notes was insufficient to establish the listing criteria.[5] (Id.) The ALJ thus provided a logical and supported explanation for her decision to adopt Dr. Jilhewar's testimony over Dorota's post-hearing evidence. *See Pepper*, 712 F.3d at 361-62.

---

[5] Both the ALJ and Dr. Jilhewar made references to Dorota's treatment not meeting "the requisite 12-month duration." (A.R. 501, 526.) The regulations require that a claimant's impairment, not her course or treatment, "last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509; *see also* 20 C.F.R. § 404.1520(d). But as explained below, any error in how they described the duration requirement is harmless given the lack of evidence supporting Dorota's assertion that she met the remaining requirements of Listing 11.02B before her date last insured.

Even if the ALJ had erroneously relied on Dr. Jilhewar's testimony with respect to the listings analysis, any such error is harmless unless Dorota demonstrates that she meets all the criteria of Listing 11.02. Nowhere in her opening or reply brief does Dorota address those criteria. And even if the ALJ had accepted Dr. Milet as an acceptable source of migraine treatment, to meet Listing 11.02B Dorota would have to show that she had migraines at least once a week for three consecutive months despite being under prescribed treatment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.02B. Putting aside that according to the listing the treatment must be prescribed by a physician, *see id.* § 11.00C, Dr. Milet's notes document that during the three months he treated her, Dorota had at least one two-week period where she reported having no migraines, (A.R. 235). Dr. Milet's records also reflect Dorota's reports that her headaches subsided when she took pain medication. (Id. at 238-39.) There is no evidence that Dorota received any headache-specific treatment from December 2009 until February 2011, reflecting a prolonged treatment gap in the period leading up to her date last insured. The ALJ also pointed out that a different ME reviewed the records at the first hearing and similarly concluded that Dorota's condition did not medically equal any listing, and Dorota has not challenged the ALJ's decision to give that ME's opinion great weight. (Id. at 496, 500.) Therefore, even if the ALJ had credited Dr. Milet's treatment as being appropriate for migraines, Dorota still has not shown that the ALJ committed reversible error in concluding that Dorota's migraines were not of listings-level severity before her date last insured.

## C. Symptom Assessment

Dorota also claims that the ALJ's evaluation of her subjective pain complaints amounts to reversible error. In particular, she argues that the ALJ failed to explain why the objective evidence does not support Dorota's pain complaints and how Dorota's testimony regarding her activities of daily living was weighed. Dorota has a particularly steep hill to climb in challenging the ALJ's treatment of her subjective statements, because a reviewing court may only reverse such an assessment where it is "patently wrong." *See Stepp*, 795 F.3d at 720. That is because as a witness to the claimant's testimony, the ALJ is in the best position to evaluate the believability of the claimant's symptom descriptions. *Id.* An "ALJ's credibility findings need not specify which statements were not credible," and if the evaluation is adequate the court will affirm even when it "also contains a considerable amount of boilerplate language and recitations." *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012). In short, a reviewing court will only disturb an ALJ's evaluation of a claimant's symptom description if it "is unreasonable or unsupported." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008).

Here the ALJ's symptom evaluation is only partially adverse, and is neither unreasonable nor unsupported. The ALJ wrote that "after reflecting on the claimant's testimony and reviewing the medical evidence," she decided to afford "some weight" to Dorota's testimony but did not fully credit Dorota's descriptions of the "frequency or intractable nature" of her headache pain. (A.R. 499, 501.) Dorota faults the ALJ for failing to explain why Dr. Milet's records reflecting limited range

15

of spinal motion and muscle spasms were insufficient to substantiate her allegations of neck, arm, elbow, and migraine pain and her testimony that she is unable to stand for more than 30 minutes. (R. 15, Pl.'s Mem. at 18-19.) But the ALJ expressly addressed Dr. Milet's findings with respect to Dorota's limited range of motion and determined that they are insufficient to fully support Dorota's testimony because there were no x-rays to corroborate the record and two different neurosurgeons examined Dorota and did not make the same findings. (A.R. 499.) The ALJ noted that Dorota had never been hospitalized or taken preventative medications during the relevant time, nor had she sought treatment with headache specialists. (Id.) As the ALJ put it, "there is no intensity of pain management seen in the record" as one would expect if Dorota's chronic pain was as severe and frequent as she described. (Id. at 500.) "Although an ALJ may not ignore a claimant's subjective reports of pain simply because they are not supported by the medical evidence, discrepancies between the objective evidence and self-reports may suggest symptom exaggeration." *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010). The court finds that the ALJ adequately explained why she found that Dorota's pain complaint was out of proportion to the objective evidence and her treatment history during the relevant period.

Dorota also argues that the ALJ's evaluation of her symptoms should be reversed because, according to her, the ALJ failed to adequately consider her activities of daily living and weigh how those activities supported her testimony. (R. 15, Pl.'s Mem. at 19.) Specifically, Dorota faults the ALJ for giving insufficient

16

treatment to her testimony that her parents helped her with child care and meal preparation and that she had to lie down in a dark, quiet room when experiencing a headache. (Id. at 19-20.) The ALJ acknowledged this testimony, (A.R. 497), but Dorota is correct that she did not analyze specifically how that testimony played into her symptom assessment.

Although an ALJ is required to consider the regulatory factors under 20 C.F.R. § 404.1529, including the claimant's daily activities, she is not "required to engage in a factor-by-factor analysis" in the hearing decision. *See Lekousis v. Colvin*, No. 13 CV 3773, 2015 WL 3856543, at *4 (N.D. Ill. June 19, 2015). Here, after reviewing all the evidence, the ALJ found that there was a mismatch between Dorota's description of the frequency and severity of her pain and the record reflecting her lack of medication or pursuit of sustained medical (as opposed to temporary chiropractic) treatment during the relevant period. (A.R. 501.) Because of that mismatch, the ALJ permissibly gave only some weight to Dorota's pain complaints. *See Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008) (affirming ALJ's credibility assessment grounded in a lack of evidence supporting claimant's complaints "during the critical period prior to her date last insured"). Although the ALJ could have done more to explain how Dorota's daily activities supported or undermined her symptom evaluation, an error in the ALJ's credibility determination does not render it "patently wrong" where, read as a whole, the assessment is sufficiently supported. *See Jones*, 623 F.3d at 1161; *see also McKinzey v. Astrue*, 641 F.3d 884, 890-91 (7th Cir. 2011) (upholding credibility

17

assessment despite finding two out of three of ALJ's explanations unsupported). That is the case here.

**D.     RFC Assessment**

In challenging the ALJ's assessment that before her date last insured Dorota could perform sedentary work with environmental restrictions, Dorota again argues that the ALJ improperly relied on Dr. Jilhewar's opinion that Dr. Milet's notes do not reflect proper migraine treatment, and asserts that a proper RFC must account for her difficulty sitting and the impact her headaches would have on her attendance at work. (R. 15, Pl.'s Mem. at 13-14.) But as explained above, the ALJ gave supported reasons for placing greater weight on Dr. Jilhewar's testimony than on Dorota's internet search results when it came to considering the appropriateness of chiropractic treatment for migraines. And as Dorota points out, to conclude that she would have had an unacceptable attendance record at work during the relevant period, the ALJ would have had to fully credit her symptom allegations. (Id. at 14.) But again, as explained above, the ALJ gave supported reasons for only partially crediting that testimony. By limiting Dorota's RFC to sedentary work, the ALJ adequately captured the limitations that she found to be supported by the overall record.

Dorota also asserts that the ALJ failed to properly assess the combined impact of her non-severe impairments, particularly depression and anxiety, together with her migraine and back pain. It is true that the ALJ did not incorporate any limitations into the RFC to reflect Dorota's non-severe mental

18

health impairments. But the ALJ explained that even if she had given Dorota the benefit of the doubt with respect to those impairments, the result here would not change, because the VE testified that a hypothetical person with Dorota's RFC in combination with mental health limitations would still be able to perform work that exists in significant numbers. (A.R. 502.) Specifically, the ALJ asked the VE to consider the jobs available to a hypothetical person with Dorota's RFC and who had moderate limitations in concentration, persistence, or pace, and was limited to simple, routine work with no fast-paced production assembly line work, without requirements for tandem work. (Id. at 579.) The VE identified several jobs that exist in significant numbers that such a person could perform. (Id. at 580.) Accordingly, the ALJ did not fail to consider the combined impact of Dorota's mental health limitations and pain, but rather expressly found that incorporating those limitations into the RFC would not change the outcome of the decision. (Id. at 502.) Dorota does not challenge the VE's testimony. Because the court is satisfied that the outcome would be the same even if the ALJ had specifically incorporated limitations related to Dorota's anxiety or depression into the RFC assessment, Dorota has not shown that the ALJ committed reversible error at the RFC stage. *See Egly v. Berryhill*, __ Fed. Appx. __, 2018 WL 3949268, at *3 (7th Cir. Aug. 16, 2018) (finding harmless error where ALJ did not explicitly incorporate mental limits into RFC but where VE testified that jobs would still exist for a person with those mental limitations).

## Conclusion

For the foregoing reasons, Dorota's motion for summary judgment is denied and the Commissioner's final decision is affirmed.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**